[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO SET ASIDE VERDICT
After a jury trial a plaintiff's verdict was returned on August 13, 1991 wherein the jury found the issues for the plaintiff Gloria Jackson as against the defendant R. G. Whipple, Inc. (hereafter Whipple) on Count II only and as against the defendant Edward E. Moukawsher on Count I. Fair, just and reasonable damages were assessed at $10,000.00.
Count I constituted a claim advanced by the plaintiff as to both defendants under the Connecticut Unfair Trade Practices Act, Connecticut General Statutes Section 42-110(a) et seq (CUTPA). Count II was a claim against R. G. Whipple, Inc. only and was based on the theory of negligence. Other claims had been disposed of by various pretrial motions.
The plaintiff filed a motion to set aside the verdict as being contrary to the law, against the evidence and inadequate.
The defendants filed a motion to set aside the verdict as being against the evidence and contrary to the law.
The plaintiff filed two memoranda in support of her motion one dated September 6, 1991 and another dated September 16, 1991. The defendants filed a memorandum of law in support of the defendants motion dated September 18, 1991.
At oral argument counsel for the defendants withdrew the motion as to the defendant R. G. Whipple, Inc. and pursued the motion as to the defendant Edward E. Moukawsher only.
THE PLAINTIFF'S MOTION
In support of the plaintiff's motion to set aside the verdict arguments were advanced with regard to various claims of error by the court relating to pretrial motions, rulings on evidence and in connection with certain requests to charge. CT Page 8565 Suffice it to say that those claims are not found to be meritorious and the plaintiff's motion is denied.
THE DEFENDANT'S MOTION
The defendant Moukawsher appears to advance two conceptually separate theories in support of his motion. First, reviewing item by item the types of conduct referred to in the plaintiff's evidence on the issue of the claimed CUTPA violation, arguments were advanced with regard to each of the specific types of evidence to urge that they did not constitute claims upon which CUTPA violations could be founded. Secondly, the defendant has claimed that as a matter of law CUTPA does not contemplate a claim by a party plaintiff against an attorney who represented that party's adversary in a prior action. Without the use of the term, the second claim appears to be a claim of lack of standing.
Because the court finds the second argument to be dispositive of the motion the claims made in the first argument need not be reviewed.
The court grants the defendant Moukawsher's motion to set aside the verdict with regard to Count I against the defendant Edward E. Moukawsher for reasons set forth below.
Some facts are necessary for an understanding of the court's rationale. In this case the plaintiff alleged and offered evidence claiming to prove that she was a mobile home owner whose mobile home occupied a lot at the defendant Whipple's mobile home park. The defendant Whipple instituted an eviction action in the Superior Court against Gloria Jackson the plaintiff wherein Whipple was represented by the defendant Edward E. Moukawsher as an attorney. A judgment of eviction against her was obtained in that action. The matter was appealed but the appeal was later dismissed. Thereafter the defendant d. G. Whipple, Inc. again represented by Attorney Edward E. Moukawsher brought a second action against the plaintiff Gloria Jackson for the collection of certain legal fees and costs relating to the eviction. Judgment was rendered in that case for the plaintiff by default and the Superior Court declined set aside the default on the urging of Gloria Jackson and her then attorney. No appeal was taken from that judgment.
The CUTPA claims against Moukawsher in this suit all relate to various alleged conduct of the defendant Attorney Edward E. Moukawsher in connection with the representation of his client in various aspects of the two previous cases. CT Page 8566
The dispositive issue is whether or not the plaintiff Gloria Jackson has standing to utilize the Connecticut Unfair Trade Practices Act to redress claimed losses arising from the activities of the attorney for her adversary in the previous litigation which went to judgment.
CUTPA prohibits any person from engaging "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce".
The term "trade" and "commerce" are defined in Section 42-110a(4) as meaning: ". . . the advertising, the sale or rent or lease, the offering for sale or rent or lease or the distribution of any services and any property, tangible or intangible, real, personal or mixed or any other article, commodity, or thing of value in this state . . ."
Section 42-110g permits a private cause of action under CUTPA by the following language: "(a) any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Section 42-110b may bring an action . . . proof of public interest or public injury shall not be required. . . ."
Neither the parties nor the court have found a prior decision in this state based upon similar facts.
The analysis therefore becomes a question of statutory interpretation as to whether a person in the plaintiff's situation has standing under CUTPA to sue the attorney of an adversary in a prior court action.
The statute does not answer that question specifically, but does provide some guidance with regard to its construction with the language that "(d) it is the intention of the legislature that this chapter be remedial and be so construed." Section 42-110b(d) Connecticut General Statutes. Because of that language, CUTPA as a remedial statute "should be generously construed to protect the victims of unfair or deceptive trade practices . . ." Hinchliffe v. American Motors Corporation, 184 Conn. 607, 615 (1981).
Also with regard to the construction of the statute the legislature has indicated that ". . . the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the Federal Courts . . . of the Federal Trade Commission Act . . ." Section 42-110b(b) Connecticut General Statutes. CT Page 8567
In addition our Supreme Court ". . . has repeatedly held, in accordance with this statutory instruction, that Federal Trade Commission (FTC) rulings and cases under the Federal Trade Commission Act . . . serve as a lodestar for interpretation of the open-ended language of CUTPA . . ." Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 179 (1986).
However, neither the parties nor the court have found an FTC case on point.
Before an analysis with regard to the statutory interpretation, it should be made clear that this case does NOT involve the issue of whether under some circumstances a party in a law suit may thereafter sustain a cause of action against the attorney for his adversary. See, e.g., Krawczyk v. Stingle, 208 Conn. 239, 244-246 (1988); Mozzochi v. Beck,204 Conn. 490 (1987); Mallen Roberts, The Liability of a Litigation Attorney to a Party Opponent, 14 Willamette L.J. 387 (1978).
This case also does NOT involve the simple question of whether or not the activities of an attorney engaged in the practice of law could amount to prohibited acts under CUTPA. See, Heslin v. Connecticut Law Clinic of Trantolo Trantolo,190 Conn. 510 (1983) (determining that CUTPA's regulation of "the conduct of any trade or commerce does not totally exclude all conduct of the profession of law").
The court is concerned in this case with the question of whether the law permits this plaintiff to pursue a CUTPA claim against this defendant in the face of the argument advanced by the defendant.
"In interpreting a statute the court must ascertain and give effect to the intent of the legislature . . . if the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . when we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself . . . the legislative history and circumstances surrounding the enactment of the statute . . . and the purpose the statute is to serve . . ." (Emphasis added) White v. Burns,213 Conn. 307, 311 (1990).
Our Supreme Court has said that the purpose of CUTPA was to "put Connecticut in the forefront of state consumer protection" citing the remarks of Representative Howard Newman in the House of Representatives during the 1973 session at which the original CUTPA legislation was enacted. Heslin v. Connecticut Law Clinic of Trantolo Trantolo, supra, 515. CT Page 8568
A further review of the legislative history relating to the 1973 enactment is helpful to this purpose. Testimony before the General Law Committee by Consumer Protection Department Commissioner Barbara Dunn suggested that the "consumers of the state of Connecticut do not have sufficient control against unfair business practices . . ." and that this legislation was necessary because of a "confrontation between the businessman and the consumer", Joint Standing Committee Hearings, General Law, Part 2, 1973 Session, Page 690, 691.
During the Senate debate on Public Act 73-615 the comments of Senator Page who reported for the Committee for General Law made it clear that the purpose of the act, among others, was to provide for "private consumer remedies", 16 Senate Proceedings, Part 8, 1973 Sess., Page 359. During the House of Representatives debate on that public act other comments of Representative Howard A. Newman also suggest that this legislation had as its purpose the providing of a "consumer remedy". 16 H.R. Proc., Part 14, 1973 Sess., Page 7321.
No change in the purpose was effected byPublic Act 75-618 of the 1975 General Assembly.
During the House proceedings on Public Act 76-303
which amended this legislation Representative Ferrari (15th district) indicated the General Assembly's intention and purpose by suggesting that the amendment would provide "even more progressive and more responsive to the needs of . . . the consumer . . ." 19 H.R. Proc., PT 6, 1976 Sess., Page 2186, 2187. Similarly, Senator Ciccarello before the Senate during its adoption of Public Act 76-303 on behalf of the Joint Standing Committee on General Law said that the purpose of the legislation was "in order to protect consumer of the state" 19 Senate Proceedings, Part 6, 1976 Session, Page 2278.
Thus it appears to the court from this analysis of the legislative history and of the language of our previous Supreme Court cases that CUTPA is for the protection of "consumers". Stated another way, in order for a plaintiff to be able to make a claim under CUTPA for the unfair trade practices of another that plaintiff must be a "consumer".
As indicated above, neither Connecticut cases nor cases interpreting the FTC have been found. However, the case of Levine v. Berley, 728 F.2d 551 (1984) which was a First Circuit United States Court of Appeals case applying the Massachusetts Unfair Trade Practices Act is very nearly on point except for the statutory differences. In that case an CT Page 8569 attorney was sued for malpractice in drawing the will of the plaintiff's deceased wife and was also charged with violating the Massachusetts Unfair Trade Practices Act. The suit was brought both on behalf of the plaintiff Irving M. Levine as an individual and as a representative of the Estate of his deceased wife. The court in analyzing the question of whether Levine as an individual had standing was applying the Massachusetts statute which at that time provided for suit by "any person who purchases or leases goods, services or property. . ." The court said: "The district court ruled that Levine was not a purchaser of services within the meaning of Section 9. We agree that Levine lacks standing in his individual capacity. The Supreme Judicial Court of Massachusetts has stated, `one who asserts rights under the section must be claiming to be a consumer.' Slaney v. Westwood Auto Inc., 366 Mass. 688, 322 N.E.2d 768 (1975). . ." Id., 555.
In the interpretation of CUTPA even applying it liberally as required to accommodate its remedial purposes, one cannot help but determine that it is a "consumer" statute designed for the protection of the consumer and administered in part by the Department of Consumer Protection.
The term "consumer" has been defined in another context as one purchasing materials from another. H. B. Sanson, Inc. v. Tax Commissioner, 187 Conn. 581, 584 (1982).
Ballentine's Law Dictionary, 3rd Edition, defines "consume" as: "to use up. . ."
"A statute should not be interpreted to twart its purpose." Kron v. Thelan, 178 Conn. 189, 192 (1979).
If the legislature had intended to include third parties within the scope of the persons who could sue under CUTPA, it could have plainly said so as it did in the products liability statute, Section 52-572 (b), Connecticut General Statutes.
In this case it is clear that the legislature intended the CUTPA legislation to benefit consumers in their dealings in trade or commerce.
Whether the trial judge agrees with the policy thus expressed is not an appropriate consideration. See Johnson v. Manson, 196 Conn. 309, 315 (1985); State v. Nelson, 126 Conn. 412,417 (1940).
The plaintiff Gloria Jackson cannot be deemed to have been a "consumer" of the services of the defendant Edward E. CT Page 8570 Moukawsher under the above analysis. For that reason so much of the defendant's motion to set aside the verdict as relates to the defendant Edward E. Moukawsher on Count I of the complaint is granted.
This ruling is not intended to set aside the plaintiff's verdict against Whipple for $10,000.00.
LEUBA, J.