[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENA DUCES TECUM
This is an action to enforce an administrative subpoena issued by the State Banking Commissioner (Commissioner) pursuant to Connecticut General Statutes 36-495 on July 14, 1992. The documents requested under subpeona were sought in conjunction with an investigation commenced by the Commissioner based on the belief that the defendant Lincoln Madison Consolidated Corporation had violated or was about to violate the Connecticut Uniform Securities Act, Connecticut General Statutes 36-470, et. seq. ("CUSA").
The defendant is not licensed by the Commissioner of Banking to sell securities in Connecticut. The Commissioner subpoenaed, among other things "[C]opies of all documentation evidencing the raising of capital, borrowing of funds and/or the offer or sale of notes or other indebtedness. . ." The defendant failed to appear and produce the subpoenaed documents and has never complied with the subpoena.
The defendant has objected to the application on two grounds. First he contends that the Commissioner of Banking may not validly subpoena a defendant corporation's records if CT Page 2201 the defendant is not licensed under CUSA. Second, the defendant argues that the Commissioner cannot use his subpoena power pursuant to 36-495(b) to determine whether the defendant is subject to this regulation, because such use of subpoena power allegedly violates the respondent's right to due process under the Fourteenth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of Connecticut.
Connecticut General Statutes 36-495 permits the Commissioner in his discretion to:
 (1) Make such public and private investigations within or outside of this state as he deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any regulation or order hereunder, or to aid in the enforcement of this chapter or in the prescribing of rules and forms hereunder.
That statute further provides as follows:
 Section 36-495(b) For the purpose of any investigation or proceeding under this chapter the Commissioner or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the Commissioner deems relevant or material to the inquiry.
Section 36-495 is a portion of the Connecticut Uniform Securities Act, CUSA, which is also known as "Blue Sky Law". This comprehensive statutory scheme was adopted for the protection of investors in this state. While there are few cases interpreting the provisions of CUSA, courts in other jurisdictions have held that Blue Sky Laws should be broadly and liberally construed so as to effectuate the purpose of protecting the investing public from fraud. See Union Land Associates v. Ussher, 174 Or. 453, 149 P.2d 568 (1944); McElfresh v. State, 151 Fla. 140, 9 So.2d 277 (1940); Kerst v. CT Page 2202 Nelson, 117 Minn. 191. 213 N.W. 904 (1927).
Both state and federal courts reviewing investigatory subpoenas in the context of enforcement proceedings have traditionally refused to adjudicate questions of coverage; that is, whether activities under investigation are subject to regulation by the administrative body conducting the investigation. Heslin v. Law Clinic of Trantolo Trantolo, 190 Conn. 510, 514-15, 461 A.2d 938
(1983); In re Application of Ajello v. Moffie, 179 Conn. 324,426 A.2d 295 (1979). See also United States v. Powell,379 U.S. 48, 57, 85 S.Ct. 248 (1964); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214, 66 S.Ct. 494 (1945); Federal Trade Commission v. Texaco, Inc., 555 F.2d 862, 871-72
(D.C. Cir.) (en banc), cert. denied, ___ U.S. ___,97 S.Ct. 2939, 2940 (1977); Securities and Exchange Commission v. Brigadoon Scotch Distributing Co., 480 F.2d 1047, 1053 (2d Cir. 1973); People ex rel. Fahner v. Halzel, 449 N.E.2d 531,533 (Ill.App. 1982).
In the case of In re Application of Ajello v. Moffie, supra, which involved a proceeding initiated by the Attorney General to enforce an investigative subpoena based on suspected violations of the Connecticut Anti-Trust Act, the Supreme Court held "While courts which enforce such subpoenas may inquire into most questions of legality, they may not inquire into questions concerning the coverage or even the probable coverage of the statute under which the Attorney General is acting." Id. p. 326. In Heslin v. Law Clinic of Trantolo Trantolo, supra, the Supreme Court explained that the aforementioned holding in Ajello was based on the court's recognition that the legislature, when it endows and administrative body with responsibility for a statute's enforcement, may authorize that body, rather than the trial court, to determine the question of coverage in the preliminary investigation of possible violations.190 Conn. at 514. The court in Heslin further stated that where an administrative body has been authorized by the legislature to enforce the statute the body may "develop, without interference or delay, a factual basis for the determination of whether particular activities come within its regulatory authority. Securities Exchange Commission v. Brigadoon Scotch Distributing Co., 480 F.2d 1047, 1052-53 (2d Cir. 1973)." 190 Conn. at 514-515. CT Page 2203
In Securities Exchange Commission v. Wall Street Transcript Corp., 422 F.2d 1371 (2d Cir.) cert. denied,398 U.S. 598, 90 S.Ct. 2170 (1970), the Second Circuit Court of Appeals stated:
 It has long been established that the question of the inclusion of a particular person or entity within the coverage of a regulatory statute is generally for an initial determination by an agency, subject to review on direct appeal, rather than for a district court whose jurisdiction is invoked to enforce an administrative subpoena. Id. at 1375.
It is clear from the aforementioned authorities that in cases to enforce investigative subpoenas the initial determination of whether a particular person or entity comes within the coverage of a regulatory statute is made by the agency, not by the court.
The defendant, here argues, essentially that it is not licensed by the banking commissioner to sell securities, and there is no evidence before the court that defendant is a broker dealer, investment adviser, or otherwise engaged in he sale of securities. The Commissioner only has jurisdiction over those licensed to sell securities and, therefore, he has no jurisdiction over the defendant. Such an interpretation of the Commissioner's powers under CUSA is ludicrous. If the Commissioner were able to investigate only those persons he has licensed, then he would be unable to discover any facts which would enable him to bring enforcement actions against those who sell securities in Connecticut without a license.
Courts have required a showing that an agency's investigation is conducted pursuant to its statutory authority, that materials sought are relevant to the inquiry, and that the request is specific and not unduly burdensome. See e.g., State v. Ghiloni, 35 Conn. Sup. 570, 398 A.2d 1204
(App. Sess. 1978). See also United States v. Powell, 379 U.S. 48,57, 58 (1964); United States v. Mortin Salt, 338 U.S. 632,653 (1949); SEC v. Brigadoon Scotch Distributing Co., 480 F.2d 1047,1053 (2d Cir. 1973).
Section 36-495 clearly authorizes the Commissioner to engage in an investigation to determine whether any person CT Page 2204 has violated any provision of CUSA, including the unauthorized sale of securities. The Commissioner has subpoened stocks, notes and other evidence of indebtedness, which fall within the statutory definition of "security" for purposes of CUSA under Section 36-471(m) thereof. The other documents requested relate to aspects of the activities of the defendant in allegedly raising capital by means of stock offerings, indebtedness or otherwise. They all appear to be relevant to the investigation of whether the defendant engaged in a violation of CUSA. The defendant has not claimed that the materials requested are not relevant to the investigation, but only that the Commissioner has no jurisdiction over the defendant. The defendant also does not claim that the materials requested are burdensome or that the description of those materials is vague.
The defendant has argued that the Commissioner should not be permitted to enforce the subpoena without first proving facts and circumstances by which he claims jurisdiction over the defendant and that a failure to do so deprives the defendant of due process. The defendant's argument is based on the case of Jutkowitz v. Dept. of Health Services, 220 Conn. 86, 596 A.2d 374 (1991). Jutkowitz involved the right to know the nature of the legal theory and the conduct that gave rise to an alleged violation of law in the context of a prosecution of that violation. The purpose of the investigative subpoena involved in this case is to enable the Commissioner to determine whether there has been a violation of the law. Prior to conducting an investigation the Commissioner is clearly not in a position to give the defendant notice of "the facts or conduct alleged to be in violation of the law." Based on the foregoing, there is no deprivation of due process rights of the defendant during the investigation arising out of a failure to inform the defendant of the specific nature of the suspected violations.
The Connecticut Supreme Court has consistently held that there is presumption of regularity with regard to the actions of public officials. The public officials are presumed to have acted legally and properly in discharging their duties until the contrary appears. Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 6,513 A.2d 1218 (1986); Beechwood Garden Tenants' Assn. v. Dept. of Housing, 214 Conn. 505, 515, 572 A.2d 989 (1990). CT Page 2205
The Commissioner's subpoena of the defendant's records carries with it a a presumption that it was issued legally, in good faith, and under proper authority for a proper purpose. In light of the presumption that the administrative subpoenas were issued for a proper purpose, the burden is shifted to the plaintiff to prove affirmatively that there is an improper purpose in issuing them. Chatanooga Pharmaceutical Ass'n. v. United States, 358 F.2d 864 (6th Cir. 1966); American Pharmaceutical Ass'n v. United States,344 F. Sup. 9 (E.D. Mich. 1971), aff'd 467 F.2d 1290 (6th Cir. 1972). The plaintiff must make a prima facie case though a showing of independent evidence that the purpose behind the issuance of the subpoenas is improper, i.e. that the subpoenas were issued in order to harass or punish, rather than to gain information relevant to the investigation. See, i.e., Finnell v. United States Department of Justice, 35 F. Sup. 410,413 (D. Kan. 1982)
In this case there has been no evidence presented to rebut the presumption of the good faith and regularity in the issuance of the subpoena. It appears clear that the subpoenas were issued in connection with an investigation of unauthorized sale of securities, a subject over which the Commissioner has authority under Section 36-495.
Based on the foregoing the court orders Lincoln Madison Consolidated Corporation to comply forthwith with the subpoena duces tecum which is the subject of this action.
Aurigemma, J.