[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, William and Howard Kegeles, have filed a seven count third amended complaint against the defendants, Melvin Ditman, Robert J. Klein, and the law firm of Bergman, Horowitz Reynolds, P.C., alleging damages in connection with estate planning performed by attorneys Ditman and Klein for the plaintiffs' decedent and father, Irving Kegeles.
Specifically, the plaintiffs allege that their father and his second wife, Miriam Kegeles (Miriam), requested that attorney Ditman draft their wills as well as mutual releases of dower/curtesy and right of election. The wills and releases were drafted and signed on June 25, 1992. No disclosures of assets were drafted to accompany the mutual releases. The plaintiffs assert that Irving and Miriam resided in Lake Worth, Florida at the time of the drafting of the wills and releases. A codicil to the will, executed on November 17, 1993, gave Miriam a life estate in property in Florida.
The plaintiffs additionally allege that following their father's death in January of 1994, William Kegeles, named as executor, used the services of Bergman, Horowitz Reynolds to facilitate probate. The plaintiffs allege that Miriam retained counsel in Florida and thereafter contested the validity of the mutual releases because she had been advised that they were invalid under Florida law because no disclosures of assets were drafted to accompany them.
The plaintiffs allege that attorney Ditman was negligent because he failed to draft disclosures of assets to accompany the CT Page 14958 wills and releases and as he subsequently failed to defend the assets of the estate (count one). The plaintiffs also allege that attorney Klein was negligent in failing to inform William Kegeles about why the will was open to challenge, in failing to inform William of the possible defenses to the will challenge, and in failing to diligently defend the estate (count two). The plaintiffs also allege that the law firm's conduct constitutes the tort of misrepresentation because it represented that it had an attorney licensed to practice in Florida; it misrepresented Florida law in stating that Florida law favors widows, rather than stating that the law firm failed to file the disclosures of assets even though Florida law requires a disclosure of assets accompany a waiver of a right of election (count three). The plaintiffs also allege that the defendants violated CUTPA when they used a letterhead advertising that the firm had an attorney licensed in Florida and billed the plaintiffs for the firm's work on the Kegeles' will challenge, a challenge which is the result of the defendants' negligence (count four). The plaintiffs also allege that the defendants violated CUTPA by intentionally misrepresenting the defendants' failure to draft the disclosures of assets; their ability to defend the will challenge; their knowledge of the law of Florida pertaining to the issue of mutual releases; and their billing the estate for matters resulting from their original negligence (count five). The plaintiffs also allege that the aforesaid conduct constitutes intentional infliction of emotional distress because the defendants knew or should have known that said conduct would cause William Kegeles, the bereaved, emotional distress (count six). Finally, the plaintiffs allege that the defendants fraudulently concealed the fact that the estate of Irving Kegeles had a cause of action against the defendants (count seven)
The defendants have filed a motion to strike counts four and five of the plaintiffs' third revised complaint on the ground that these counts are legally insufficient and fail to state a claim upon which relief can be granted. "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. . . ." (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). "If facts provable in a count of a complaint would support a cause of action, the motion to strike CT Page 14959 that count must be denied. . . ." (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, supra, 244 Conn. 271.
 I
In count four, the plaintiffs allege that the firm violated CUTPA in its advertising and billing practices. Specifically, the plaintiffs allege that the firm used its letterhead to advertise that one of its attorneys was licensed to practice law in Florida and that the firm billed the estate for services rendered in connection with Miriam Kegeles' will challenge. The defendants argue in support of their motion to strike that although count four contains statements to the effect that a law firm's letterhead is a form of advertising and that the letterhead represented that Attorney Klein was licensed in Florida, neither of these assertions constitutes an unfair business practice within the meaning of CUTPA. In addition, the defendants argue that the allegation that they violated CUTPA by billing the estate for matters related to the challenge to the estate (1) constitutes a mere conclusion that billing practices constitute an entrepreneurial aspect of the practice of law within the meaning of CUTPA; (2) fails to allege how the billing was unfair under CUTPA; and (3) fails to allege that the manner in which the billing was carried out was a practice.
Connecticut General Statutes § 42-110b(a), CUTPA, provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 591, 657 A.2d 212 (1995). "[I]n general, `CUTPA applies to the conduct of attorneys.' Heslin v. Connecticut LawClinic of Trantolo Trantolo, 190 Conn. 510, 521, 461 A.2d 938
(1983). The statute's `regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law.' (Internal quotation marks omitted.) Id. Nevertheless, [the Supreme Court has] declined to hold that `every provision of CUTPA permits regulation of every aspect of the practice of law. . . .'Id., 520. [It has] stated, instead, that, `only the entrepreneurial aspects of the practice of law are covered by CUTPA.' Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34,699 A.2d 964 (1997)." Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 79, 717 A.2d 724 (1998).
The entrepreneurial aspects of legal practice include CT Page 14960 "solicitation of business and billing practice, as opposed to claims directed at the competence of and strategy employed. . . ."Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 35-36, citingEriks v. Denver, 118 Wash.2d 451, 824 P.2d 1207, 1214 (1992) ("The entrepreneurial aspects of legal practice are those related to: how the price of legal services is determined, billed and collected and the way a law firm obtains, retains, and dismisses clients.")
The plaintiffs allege that the law firm's letterhead represents that one of its attorneys is licensed to practice law in Florida. While the plaintiffs' claim pertains to an entrepreneurial aspect of the practice of law, advertising, it does not allege that this advertisement was the least bit false or misleading. The plaintiffs have failed to state a claim for violation of CUTPA through unfair or deceptive advertising.
The plaintiffs also claim that the defendants' billing practices give rise to a CUTPA claim: "Attorneys Ditman and Klein, fully aware that a mistake had been made in the drafting of the mutual releases, billed the estate of Irving Kegeles for matters related to Marion Kegeles' challenge to the estate. This challenge is directly related to the negligent drafting of the mutual releases."
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . CUTPA reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law." (Citation omitted; internal quotation marks omitted.) Willow Springs Condo. Assn., Inc. v. Seventh BRTDevelopment Corp. , 245 Conn. 1, 43, 717 A.2d 77 (1998). While a wrong need not be actionable under some other law to be CT Page 14961 actionable under CUTPA, it must, in fact, be a wrong. "Whether a practice is unfair and thus violates CUTPA is an issue of fact";Id., 43; but like all issues of fact, it becomes a question of law when no reasonable juror could find that the practice was unfair. See Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694,704, 694 A.2d 788 (1997). Finally, "[wh]ether the plaintiffs have alleged the elements of a CUTPA claim is a question of law. . . ." Marr v. WMX Technologies, Inc., 244 Conn. 676, 681,711 A.2d 700 (1998).
No party wants to compensate a professional for services the professional renders to correct the professional's own foul-up. However, an attorney is entitled to compensation where he has not been discharged and continues to work on the client's affairs. See Miller v. Urban, 123 Conn. 331, 332-33, 195 A. 193 (1937). Of course, the complexity of the issues presented to the attorney and the skill with which he has dealt with them are certainly criteria for the trier to consider in awarding attorney's fees. See Andrews v. Gorby, 237 Conn. 12, 24,675 A.2d 449 (1996). But an attorney is not forbidden from presenting the client with a bill for services and his doing so does not trigger a CUTPA violation. Any other rule would convert a claim for simple legal malpractice into a CUTPA claim whenever the attorney has presented a bill for his complete services. I do not believe that the law as enunciated in Beverly Hills Concepts should be so easily circumvented. See Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, supra, 247 Conn. 79 (reaffirming that mere professional legal malpractice does not give rise to a cause of action under CUTPA). Thus, the plaintiffs have failed to state a claim for violation of CUTPA through unfair or deceptive billing. The defendants' motion to strike count four is granted.
 II
The defendants move to strike count five on the ground that it is legally insufficient and fails to state a claim for which relief can be granted. In count five, the plaintiffs allege that "[t]he entrepreneurial conduct of the Defendants, as aforesaid, constituted an unfair method of competition within the meaning of Conn. Gen. Stat. § 42-110b(a) in that they acted recklessly and wantonly regarding the protection of the estate of Irving Kegeles and intentionally misrepresented to the executor William Kegeles their failure to draft disclosures of assets, their ability to defend [the will challenge], [their] knowledge of the law in Florida pertaining to the issue of mutual releases and billing, CT Page 14962 [and their having billed] the estate of Irving Kegeles for matters resulting from their original negligence." Additionally, the plaintiffs allege that "as a result of the conduct alleged in this count, the plaintiffs have suffered an ascertainable loss of money or property." "In order to establish a claim for intentional misrepresentation, the plaintiff must allege (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury."Weisman v. Kaspar, 233 Conn. 531, 539-40, 661 A.2d 530 (1995). Broadly construing the plaintiffs' allegations, as the court must on a motion to strike; see Peter-Michael, Inc. v. Sea ShellAssociates, supra, 244 Conn. 270-71; the plaintiffs not only allege that the defendants committed malpractice but also allege that they sought to conceal it by making intentional misrepresentations and by billing the plaintiffs for their services in attempting to remedy it. This claim satisfies the cigarette rule because it alleges conduct which is unfair at common law; which is unethical; and which has caused the plaintiffs injury. In addition, the plaintiffs have stated a violation of CUTPA based on an entrepreneurial aspect of the practice of law, billing, insofar as they allege that this billing was done to remedy the malpractice as opposed to alleging that the billing constitutes malpractice.
This fifth count, however, is poorly drafted as it realleges all of the prior 54 allegations contained in the prior four counts, many of which allegations are irrelevant or are not properly pleaded as part of a CUTPA claim. While it may be that the defendants should be faulted for permitting this pleading to remain unrevised, I cannot ignore that some unfortunate trial judge may have to charge a jury on this count some day. The plaintiffs are ordered to redraft count five to cull out those unnecessary allegations and as to allege "a concise statement of the facts constituting the cause of action." (Emphasis added.) Practice Book § 10-20.
The motion to strike the fourth count is granted. The motion to strike the fifth count is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court
CT Page 14963