STATE OF CONNECTICUT v. PATRICK CAMPBELL
(14130)

PETERS, C. J., BORDEN, BERDON, NORCOTT and SANTANIELLO, Js.

Argued September 30—decision released December 15, 1992

*Monte P. Radler,* assistant public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Bruce Hudock,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is the constitutionality of General Statutes (Rev. to 1987) § 17-245, now codified as § 17a-567,[1] which requires a

[1] General Statutes (Rev. to 1987) § 17-245, now recodified as § 17a-567, provides: "(a) If the report recommends that the defendant be sentenced in accordance with the conviction, placed on probation by the court or placed on probation by the court with the requirement, as a condition of such probation, that he receive outpatient psychiatric treatment, the defendant shall be returned directly to the court for disposition. If the report recommends sentencing in accordance with the conviction and confinement in the institute for custody, care and treatment, then during the period between the submission of the report and the disposition of the defendant by the court such defendant shall remain at the institute and may receive such custody, care and treatment as is consistent with his medical needs.

"(b) If the report recommends confinement at the institute for custody, care and treatment, the court shall set the matter for a hearing not later than fifteen days after receipt of the report. Any evidence, including the report ordered by the court, regarding the defendant's mental condition may be introduced at the hearing by either party. Any staff member of the diagnostic unit who participated in the examination of the defendant and who signed the report may testify as to the contents of the report. The defendant may waive the court hearing.

"(c) If at such hearing the court finds the defendant is not in need of custody, care and treatment at the institute, it shall sentence him in accordance with the conviction or place him on probation. If the court finds that such person is in need of outpatient psychiatric treatment, it may place

trial judge to follow the presentence report of the Whiting Forensic Institute[2] (Whiting or the institute) advising against commitment of a convicted defendant to the institute. The defendant, Patrick Campbell, was charged with two counts of murder in violation of General Statutes § 53a-54a.[3] The trial court, *Dean, J.,* accepted his pleas of guilty to both counts under the *Alford* doctrine.[4] Prior to sentencing, the defendant successfully moved for a psychiatric examination by the Whiting staff, as provided for in General Statutes (Rev. to 1987) § 17-244, now codified as § 17a-566,[5] to deter-

him on probation on condition that he receive such treatment. If the court finds such person to be mentally ill and dangerous to himself or others and to require custody, care and treatment at the institute, it shall sentence him in accordance with the conviction and order confinement in the institute for custody, care and treatment *provided no court may order such confinement if the report does not recommend confinement at the institute.* The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence." (Emphasis added.)

[2] General Statutes (Rev. to 1987) § 17-239, now codified as § 17a-561, provides: "The Whiting Forensic Institute shall exist for the care and treatment of (1) mentally ill patients, confined in facilities under the control of the department of mental health, who require care and treatment under maximum security conditions, (2) persons convicted of any offense enumerated in section 17-244 who, after examination by the staff of the diagnostic unit of the institute as herein provided, are determined to be mentally ill and dangerous to themselves or others and to require custody, care and treatment at the institute and (3) inmates in the custody of the commissioner of correction who are transferred in accordance with sections 17-194b to 17-194g, inclusive, and who require custody, care and treatment at the institute."

[3] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[4] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[5] General Statutes (Rev. to 1987) § 17-244, now codified as § 17a-566, provides: "(a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature,

mine his suitability for treatment at Whiting. The Whiting diagnostic unit's subsequent report advised against the defendant's commitment to Whiting and recommended a sentence in accordance with his conviction.

may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the institute or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the institute for a period not to exceed sixty days, except as provided in section 17-245 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant.

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined.

"(c) Upon completion of the physical and psychiatric examination of the defendant, but not later than sixty days after admission to the diagnostic unit, a written report of the results thereof shall be filed in quadruplicate with the clerk of the court before which he was convicted, and such clerk shall cause copies to be delivered to the state's attorney, to counsel for the defendant and to the office of adult probation.

"(d) Such report shall include the following: (1) A description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the institute; and (4) a recommen-

The defendant filed a motion to correct on the ground that the commitment scheme in § 17-245 violated his constitutional rights. The trial court, *Bingham, J.,* denied the motion, and sentenced the defendant to concurrent terms of imprisonment of forty-five years. The defendant appeals from the trial court's denial of the motion to correct.[6] We affirm.

According to the factual statement made by the state at the time the defendant pleaded guilty, the defendant killed his parents, Kenneth and Anna Mae Campbell, with a sledgehammer at their house in Darien on July 1, 1987. After killing them, the defendant took his parents' bodies to a wooded area behind the house, doused them with gasoline, and set them on fire.

Whiting undertook a psychiatric examination of the defendant in response to his motion for such an examination pursuant to § 17-244. In a preliminary diagnostic report, the courts diagnostic clinic of the department of mental health recommended that the examination pursuant to § 17-244 (a) begin as soon as bed space at Whiting became available. Whiting examined the defendant from November 8, 1988, through January 17, 1989. After comprehensive psychological testing, medical examination, review of reports of previously conducted psychological and psychiatric evaluations, and behavioral observation, Whiting issued its recommendation. Whiting advised the court to sentence the defendant in accordance with his conviction and not to commit him to Whiting because, although he was "dangerous to himself and others," "[t]here is no evidence of psychosis."

---

dation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with the conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."

[6] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).

Before the court acted on Whiting's recommendation, on May 19, 1989, the defendant filed a motion to correct, claiming that, insofar as § 17-245 precluded the trial court from rejecting the recommendation, the statute was unconstitutional and, therefore, "any disposition of the defendant's case . . . would be illegal." Specifically, the defendant argued that § 17-245 violated: (1) the separation of powers provision of the Connecticut constitution; (2) the due process provisions of the Connecticut and United States constitutions; and (3) the equal protection provisions of the Connecticut and United States constitutions.

After an evidentiary hearing, the court denied the defendant's motion to challenge the recommendation of the Whiting report and to hold a further hearing to consider the validity of Whiting's conclusions. The court upheld the constitutionality of § 17-245, and construed that provision to preclude the further hearing sought by the defendant. The court then sentenced the defendant to a term of incarceration.

In this appeal, the defendant reiterates the constitutional claims that he raised in the trial court. He continues to challenge the validity of § 17-245 under the constitutional law of separation of powers, due process and equal protection. He does not, however, maintain that he has been deprived of a prisoner's right to receive mental health treatment. At stake here is solely his contention that he has a constitutional right to a judicial determination of whether, in lieu of incarceration, he should be committed to Whiting upon order of the trial judge at the time of sentencing, contrary to Whiting's recommendation.

I

In ruling on the constitutional challenge to § 17-245 raised in the defendant's motion to correct, the trial court interpreted § 17-245 to preclude a hearing on the

accuracy of the Whiting report and to prohibit issuance of an order committing the defendant to Whiting in light of the report's recommendation against such commitment. Our inquiry must begin with whether § 17-245, properly construed, embodies such a restriction, because only if it does will we need to address the defendant's constitutional challenge to that provision. "Established wisdom counsels us to exercise self-restraint so as to eschew unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 706, 553 A.2d 596 (1989).

The trial court looked to the specific language of § 17-245 to support its conclusion that the statute prohibits judicial supervision of a Whiting recommendation against commitment for treatment of a convicted criminal defendant. The pertinent statutory language distinguishes sharply between recommendations *for* commitment to Whiting and recommendations *against* commitment to Whiting. A recommendation *for* confinement at Whiting requires a further judicial hearing and authorizes the trial court thereafter either to sentence the defendant in accordance with the conviction or to order him committed to Whiting.[7] By contrast, a recommendation *against* confinement at Whiting and for sentencing in accordance with a conviction requires that "the defendant shall be returned directly to the court for disposition." General Statutes (Rev. to 1987) § 17-245 (a). Subsection (c) of § 17-245 provides explicitly that "no court may order [confinement in Whiting] if the report does not recommend confinement at the institute." In light of these categorical

---

[7] General Statutes (Rev. to 1987) § 17-245 also authorizes the trial court to place a defendant on probation with or without the condition that he receive outpatient psychiatric treatment. Those potential alternative dispositions, however, are not relevant in this case.

legislative directives, we agree with the trial court's construction of § 17-245 (a). See *State* v. *Davis*, 190 Conn. 327, 343, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983).

## II

In light of our construction of § 17-245, we now proceed to the defendant's constitutional attacks on § 17-245. A party challenging the constitutionality of a statute bears the heavy burden of establishing its unconstitutionality beyond a reasonable doubt. *Perry* v. *Perry*, 222 Conn. 799, 810, 611 A.2d 400 (1992); *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 590, 590 A.2d 447 (1991); *Bartholomew* v. *Schweizer*, 217 Conn. 671, 675, 587 A.2d 1014 (1991); *Zapata* v. *Burns*, 207 Conn. 496, 508, 542 A.2d 700 (1988). The court will indulge in every presumption in favor of the statute's constitutionality and, when interpreting a statute, will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *Bartholomew* v. *Schweizer*, supra, 675–76.

## A

The defendant's first constitutional challenge alleges that § 17-245 violates the separation of powers provisions of the constitution of Connecticut, articles second and fifth.[8] His separation of powers argument has two components: (1) § 17-245 impermissibly withholds sentencing discretion from the judiciary, and instead

---

[8] Article second of the constitution of Connecticut provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Article fifth of the constitution of Connecticut, as amended by article XX, § 1, of the amendments to the constitution of Connecticut, provides in pertinent part: "Sec. 1. The judicial power of the state shall be vested in a

places that discretion in the executive branch; and (2) § 17-245 impermissibly delegates a legislative function to the executive branch by vesting Whiting with the authority to determine, without guidelines and without the possibility of review, what it means to "require custody, care and treatment." We disagree with both arguments.

Because the powers of the three branches of government inevitably overlap, this court has "consistently held that the doctrine of the separation of powers cannot be applied rigidly"; *Bartholomew* v. *Schweizer,* supra, 676; *Adams* v. *Rubinow,* 157 Conn. 150, 155, 251 A.2d 49 (1968); and has "refused to find constitutional impropriety in a statute simply because it affects the judicial function . . . ." (Citations omitted; internal quotation marks omitted.) *Bartholomew* v. *Schweizer,* supra; *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 522, 461 A.2d 938 (1983). "A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . ." (Citations omitted; internal quotation marks omitted.) *Bartholomew* v. *Schweizer,* supra.

In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority. See *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 394–95, 512 A.2d 152 (1986); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 522; *State* v. *Darden,* 171 Conn. 677, 679, 372 A.2d 99 (1976). A statute will be

supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role. *University of Connecticut Chapter, AAUP* v. *Governor,* supra, 394–95; *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra, 522–23; *State* v. *Darden,* supra.

Although the defendant makes no claim that § 17-245 interferes with the orderly functioning of the Superior Court, he does claim that § 17-245 involves a subject, the sentencing of criminal defendants, that lies exclusively within the judicial power. Although the judiciary unquestionably has power over criminal sentencing, the defendant's claim fails because the judiciary does not have exclusive authority in that area. In *State* v. *Darden,* supra, 680, this court sustained the legislature's creation of mandatory minimum sentences, holding that sentencing is not within the exclusive control of the judiciary and that there is no constitutional requirement that courts be given discretion in imposing sentences. Moreover, we have held it proper to construe broadly a remedial statute designed to curb the "ill effects stemming from wide judicial discretion in sentencing prisoners for similar offenses." *State* v. *Anderson,* 220 Conn. 400, 404, 599 A.2d 738 (1991).[9]

---

[9] We are unpersuaded by three California Supreme Court cases on which the defendant relies for a contrary result. The defendant has cited *People* v. *Navarro,* 7 Cal. 3d 248, 497 P.2d 481, 102 Cal. Rptr. 137 (1972); *Esteybar* v. *Municipal Court,* 5 Cal. 3d 119, 485 P.2d 1140, 95 Cal. Rptr. 524 (1971); *People* v. *Tenorio,* 3 Cal. 3d 89, 473 P.2d 993, 89 Cal. Rptr. 249 (1970). Of these, only *People* v. *Navarro,* supra, involved a separation of powers claim relating to sentencing. In that case, the California court determined that a state statute violated the state constitution because it conferred initial discretion on a court to sentence a defendant to a drug rehabilitation program, yet authorized the prosecutor thereafter to disapprove such a commitment. Id., 259. The California statute thus conditioned

The defendant also contends that § 17-245 violates separation of powers principles because it unconstitutionally delegates sentencing authority to Whiting, an administrative agency. The defendant argues that § 17-245 is unconstitutionally vague and improperly authorizes an administrative body to devise the standards by which to determine who "require[s] custody, care and treatment at the institute."

We begin our analysis of the defendant's delegation claim with the proposition that "it is inherent in this separation [of powers], since the law-making function is vested exclusively in the legislative department, that the Legislature cannot delegate the law-making power to any other department or agency." *State* v. *Stoddard,* 126 Conn. 623, 627, 13 A.2d 586 (1940). We have held, however, that the legislature may expressly authorize an administrative agency to "fill up the details" of a law. Id., 628. "In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform . . . ." Id.; see also *Bottone* v. *Westport,* 209 Conn. 652, 659, 553 A.2d 576 (1989).

Contrary to the defendant's claim that § 17-245 contains constitutionally inadequate standards to guide Whiting's determination of whether a defendant is a suitable candidate for commitment to the institute at the time of sentencing, that statutory provision is accompanied by guidelines to advise the Whiting staff of what it must consider in making its determination. Section 17-244 (d) (3) requires that the Whiting report contain, inter alia, "an opinion as to whether the diag-

an otherwise broad grant of discretion to the judiciary on approval by a person who is not only a member of the executive branch, but also an adversary. The provisions of General Statutes (Rev. to 1987) § 17-245 do not manifest a similar encroachment on the exercise of judicial discretion.

nosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the institute." By focusing on the "diagnosis and prognosis," this provision directs the Whiting staff to base its recommendation on medical data and on its medical expertise. The provision also advises that the underlying medical information must "demonstrate clearly" that the defendant should be committed, giving the Whiting staff a standard by which it must measure the certainty of its conclusions.

The test for constitutionally sufficient standards to govern the exercise of delegated powers requires only that the standards be "as definit[e] as is reasonably practicable under the circumstances." (Internal quotation marks omitted.) *University of Connecticut Chapter, AAUP* v. *Governor,* supra, 398. In that case, we rejected an argument that General Statutes § 4-85 (b), which authorized the governor to reduce budgetary allotments when there was "a change of circumstances" or when he "deems necessary," contained constitutionally deficient standards to guide the governor's exercise of delegated power. See also *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 120, 355 A.2d 72 (1974). We recognized the risk that excessive judicial insistence on specificity could "hamper the flexibility needed" for the governor to fulfill his duties. *University of Connecticut Chapter, AAUP* v. *Governor,* supra, 399. Applying the test in this case, we hold that the statutory standards contained in §§ 17-244 and 17-245 are as definite as is reasonably practicable and are, therefore, constitutionally sufficient to guide Whiting's exercise of its delegated power. Because the exercise of discretion by Whiting involves medical diagnoses, it was reasonable for the legislature to set out in §§ 17-244 and 17-245 merely general guidelines to govern Whiting's determination of a defend-

ant's need for care, custody and treatment at the institute. We, therefore, reject the defendant's separation of powers claims.

## B

The defendant argues, in his second constitutional claim, that § 17-245 violates his right to due process under the state[10] and federal constitutions.[11] Specifically, the defendant urges reconsideration of *State* v. *Davis,* supra, where we held that, under federal due process principles, "no constitutionally protected liberty interest was implicated by the trial court's refusal to grant the defendant's request for a hearing on the report filed by the Whiting Forensic Institute."[12] Id., 341. Moreover, the defendant maintains that § 17-245[13] unconstitutionally deprives him of the right to submit information to correct or contest presentence material submitted to the trial court by the state. We are unpersuaded.

Due process analysis begins with the identification of the life, liberty or property interest at stake. In this case, the defendant has alleged that he has a liberty interest that entitles him to a judicial determination of his need for mental health treatment at Whiting in

---

[10] Because the defendant has provided no independent analysis under the state constitution, we do not review his state due process claim. *State* v. *Kyles,* 221 Conn. 643, 657 n.9, 607 A.2d 355 (1992); *State* v. *Lewis,* 220 Conn. 602, 608 n.3, 600 A.2d 1330 (1991).

[11] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[12] Because the defendant has not analyzed the state constitution's due process clause independently of its federal counterpart, we remain bound, as we were in *State* v. *Davis,* 190 Conn. 327, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983), to apply federal law. We conclude that *State* v. *Davis,* supra, accurately applied federal law, and we reaffirm it here.

[13] An apparently typographical error in the defendant's brief misstates that statute's section number.

lieu of incarceration. *State* v. *Davis,* supra, 336.[14] To determine whether § 17-245 unconstitutionally deprives him of that interest, we must decide whether the defendant has established that: (1) the liberty interest falls within the protection of the due process clause; (2) he has been deprived of that interest; and (3) the deprivation has occurred without due process of law. *Tedesco* v. *Stamford,* 222 Conn. 233, 241, 610 A.2d 574 (1992); see also *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *State* v. *Davis,* supra, 336–37.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." (Internal quotation marks omitted.) *State* v. *Davis,* supra, 337. We first consider whether the defendant has a constitutionally protected liberty interest derived from the due process clause.

As a general matter, "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him . . . so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum* v. *Fano,* 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976). As long as the confinement is otherwise constitutional, therefore, a defendant has no due process right to be sentenced to a particular type of facility. *State* v. *Davis,* supra.

The defendant maintains, however, that his confinement in prison does "otherwise violate the constitution"

[14] We reject the defendant's suggestion that a life, rather than a liberty, interest is at stake in this case. The defendant has not alleged in this court or elsewhere that his receipt of treatment at Whiting in lieu of incarceration is necessary for his very survival. Accordingly, his interest, as was the defendant's interest in *State* v. *Davis,* 190 Conn. 327, 336, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983), is properly characterized as a liberty interest.

because it violates the eighth amendment[15] guarantee of "reasonable medical treatment, including psychiatric care." This argument cannot succeed, however, because it assumes that access to psychiatric care requires immediate commitment to Whiting rather than incarceration. Inmates committed to the commissioner of correction may avail themselves of voluntary commitment for psychiatric treatment pursuant to General Statutes § 17a-513. As the defendant conceded at oral argument, if the defendant were improperly denied such treatment, he could seek relief in a petition for a writ of habeas corpus. The defendant's incarceration, therefore, accords with eighth amendment requirements and does not "otherwise violate the Constitution." *Meachum* v. *Fano,* supra, 224. Accordingly, he has no liberty interest derived from the due process clause in obtaining treatment at Whiting instead of being incarcerated.

We next consider the defendant's contention that state law creates such a liberty interest. In order to prevail, the defendant must show that the state statute creates a right to treatment at Whiting instead of imprisonment or creates a justifiable expectation that such treatment will be afforded to him. *State* v. *Davis,* supra, 340. Section 17-245 authorizes the Whiting officials who issue the report to recommend any one of four options: commitment to Whiting; sentencing in accordance with the conviction; probation; or probation conditioned on receipt of outpatient psychiatric treatment. The trial court thereafter has discretion to reject or accept the Whiting recommendation, unless it advises against commitment, in which case the recommenda-

---

[15] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

tion is binding.[16] In light of the number and variety of these courses of action that may be taken by the Whiting staff and the trial court, we hold that § 17-245 does not create either a right to treatment at Whiting in lieu of incarceration or a justifiable expectation of receiving such treatment. This holding comports with our decision in *State* v. *Davis,* supra, where we determined that §§ 17-244 and 17-245 neither create a right to be placed either in outpatient therapy or in Whiting nor give rise to a justifiable expectation that one of these two options will be chosen.

Because the defendant has no liberty interest in obtaining mental health treatment at Whiting in lieu of imprisonment, we conclude that his due process claim has no merit.[17] We hold, therefore, that although the legislature may choose, as a matter of policy, to afford a hearing to those excluded from Whiting at the presentence stage, such a hearing is not constitutionally required.[18]

---

[16] Additionally, the trial court has discretion under General Statutes (Rev. to 1987) § 17-244 to decide whether to order an initial psychiatric examination of a defendant. See *State* v. *Gates,* 198 Conn. 397, 404, 503 A.2d 163 (1986).

[17] The defendant advances a related due process claim that General Statutes (Rev. to 1987) § 17-245 violates his constitutional right to present evidence to contradict the Whiting report. Although the federal constitution does guarantee certain limited procedural safeguards against receiving a sentence based on material misinformation; A. Spinella, Connecticut Criminal Procedure (1985) p. 748; that guarantee is inapplicable here because the Whiting recommendation against commitment in lieu of incarceration is not a sentence. We therefore read this claim as, in effect, a claim that he has a right to a hearing on the Whiting report. Because we hold that the defendant has no liberty interest in obtaining mental health treatment at Whiting in lieu of incarceration and, therefore, is entitled to no process before being denied such treatment, we reject his contention that he is constitutionally entitled to an opportunity to present evidence at a hearing to contest the report.

[18] The defendant's due process argument reflects a misunderstanding of the line of cases on which he relies for the proposition that he is entitled to a hearing on the Whiting report. We note that "[i]t is significant that this defendant . . . is not the focus of any *involuntary* deprivation of a

## C

Finally, the defendant claims that § 17-245 violates the equal protection clause of the fourteenth amendment to the federal constitution[19] because it arbitrarily treats convicted defendants who have not yet been sentenced differently from civilians and sentenced defendants regarding mental health treatment. We disagree.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." (Internal quotation marks omitted.) *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Franklin* v. *Berger,* 211 Conn.

---

right, but rather is himself *voluntarily* seeking the benefit of the statute." *State* v. *Davis,* 190 Conn. 327, 337, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983). The primary federal case on which the defendant relies in support of his due process claim is *Vitek* v. *Jones,* 445 U.S. 480, 488–90, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), which held that due process requires a hearing before state officials may involuntarily transfer a prisoner from a prison to a state mental hospital. That holding, however, was driven by the perceived stigma associated with mental health treatment. Indeed, although involuntary transfer from one prison to another prison implicates no liberty interest; *Meachum* v. *Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976); and voluntary commitment to a mental health center implicates no liberty interest; *State* v. *Davis,* supra, 337–41; an involuntary transfer of a prisoner to a mental health treatment center does implicate a liberty interest because that latter transfer works " 'a "major change in the conditions of confinement" amounting to a "grievous loss". . . .' " *Vitek* v. *Jones,* supra, 492; *Chesney* v. *Adams,* 377 F. Sup. 887, 893 (D. Conn. 1974). Despite his position to the contrary, the cases cited by the defendant turn on the supposed undesirability of mental health treatment and the potentially adverse, stigmatizing social consequences of it. They are, therefore, inapposite.

[19] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

591, 596, 560 A.2d 444 (1989); *Darak* v. *Darak,* 210 Conn. 462, 473, 556 A.2d 145 (1989). Social and economic legislation will generally be held to violate the equal protection clause only if the classification drawn by the statute is not rationally related to a legitimate state interest. See *Cleburne* v. *Cleburne Living Center, Inc.,* supra, 439–40. The general rule gives way if a state law affects fundamental rights guaranteed by the federal constitution, or invidiously discriminates against a suspect class, and courts will sustain such laws only if they are narrowly tailored to serve a compelling state interest. See id., 440.

The defendant argues that strict scrutiny is the appropriate standard under which to review the subject classification because § 17-245 affects his fundamental rights to medical and psychiatric care under the eighth amendment, to life under the due process clause, and to a judicial determination of mental illness.[20] We have rejected, supra, the defendant's contention that he possesses the latter two rights, and they, therefore, cannot serve as the basis for undertaking strict scrutiny review of the allegedly unconstitutional classification drawn by § 17-245. Moreover, we decline to address the defendant's argument that the alleged fundamental eighth amendment right to psychiatric care entitles him to a strict scrutiny review of the classification because we conclude that, regardless of the standard of review, the defendant's claim fails.

First, the defendant claims that, under § 17-245 and General Statutes (Rev. to 1987) § 17-251, now codified as § 17a-570,[21] convicts who have not yet been sen-

---

[20] The defendant has made no claim that convicts who have not yet been sentenced are a suspect class, subject to historical discrimination, and thereby requiring heightened review of the statute on that basis.

[21] General Statutes (Rev. to 1987) § 17-251, now codified as § 17a-570, provides in pertinent part: "(a) . . . . [I]f such person was sentenced and

tenced, the class[22] of which he is a member, have the opportunity to be committed to Whiting in lieu of incarceration and, upon release from the institute, to be returned to the community regardless of the original sentence. By contrast, under General Statutes (Rev. to 1987) § 17-194e, now codified as § 17a-515,[23] prisoners who are committed to a mental health center after sentencing must be returned to the custody of the commissioner of correction upon release from commitment. Although these provisions afford different treatment to different classes of individuals, the defendant, as a convict who has not yet been sentenced, is a member of the advantaged class. Because he is not aggrieved by this disparity in treatment, he has no standing to challenge it. See *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990) (requiring claimant to make a "colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity"); *Shaskan* v. *Waltham Industries Corporation*, 168 Conn. 43, 49, 357 A.2d 472 (1975).

confined in the institute under section 17-245, he shall not be released except upon order of the court . . . .

"(b) . . . . If the court determines the patient should be discharged from the institute, it shall then determine whether the patient should be released, granted parole or returned to the custody of the commissioner of correction."

We note that § 17-251 was subsequently amended to limit the court's authority regarding the release of a Whiting committee, and to provide in relevant part: "(b) . . . . If the court determines the patient should be discharged from the institute, he shall be returned to the custody of the commissioner of correction."

[22] We assume, without deciding, that the class identified by the defendant constitutes "a distinct or cognizable group," which is a required element of a successful equal protection claim. See *State* v. *Couture*, 218 Conn. 309, 315, 589 A.2d 343 (1991).

[23] General Statutes (Rev. to 1987) § 17-194e, now codified as § 17a-515, provides in pertinent part: "COMMITMENT PROCEEDINGS FOR INMATES OF CORRECTIONAL INSTITUTIONS TO HOSPITALS FOR MENTAL ILLNESS. . . . [I]f the court revokes the order of commitment, the person shall be returned to any institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated, in which case he shall be discharged."

Second, the defendant compares civilians subject to commitment under General Statutes (Rev. to 1987) §§ 17-177 and 17-178, now codified as §§ 17a-497 and 17a-498, with sentenced prisoners seeking voluntary commitment under General Statutes (Rev. to 1987) § 17-194c, now codified as § 17a-513. Because the defendant is not a member of either of these classes of persons, however, he has no standing to challenge any disparity in their treatment. *Monroe* v. *Horwitch,* supra; cf. *Holland* v. *Illinois,* 493 U.S. 474, 476–77, 110 S. Ct. 803, 107 L. Ed. 2d 905, reh. denied, 494 U.S. 1050, 110 S. Ct. 1514, 108 L. Ed. 2d 650 (1990) (holding that a white criminal defendant has standing to bring equal protection challenge to exclusion of black jurors from petit jury only because of the defendant's sixth amendment right to an impartial jury).

Finally, the defendant asserts that, because § 17-245 allows the trial court discretion to reject the Whiting report if it recommends commitment at the institute, principles of equal protection require that the trial court have similar authority to reject a Whiting recommendation against commitment. We understand this as an argument that § 17-245 unconstitutionally affords different treatment to the class of those for whom Whiting recommends in favor of commitment as compared to the class of those for whom Whiting recommends against commitment.

We disagree with the defendant's claim because the two groups are not similarly situated, as is required in an equal protection claim. *Darak* v. *Darak,* supra, 473. When Whiting recommends in favor of commitment of a defendant, the defendant's constitutionally protected liberty interests are implicated because an involuntary commitment works " 'a "major change in the conditions of confinement" amounting to a "grievous loss". . . .' " See *Vitek* v. *Jones,* 445 U.S. 480, 492, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). Involuntary

commitment to a mental hospital involves "more than a loss of freedom . . . [and] 'can engender adverse social consequences. . . .' [or] ' "stigma." . . . .' " Id., quoting *Addington* v. *Texas,* 441 U.S. 418, 426, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). In contrast, Whiting's recommendation against commitment of a defendant to the institute implicates no constitutionally protected liberty interests. See *State* v. *Davis,* supra, 341. This fundamental distinction between the two groups makes the defendant's equal protection claim unsustainable.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and SANTANIELLO, Js., concurred.

BERDON, J., dissenting. I disagree with the court's determination today of the contours of the liberty interests protected by the due process clause of the United States constitution.[1] This case involves the right of the defendant, Patrick Campbell, to be heard regarding his eligibility to be sentenced to Whiting Forensic Institute (Whiting), a facility established for the care and treatment of mentally ill persons. General Statutes § 17a-561.[2]

The defendant, who was twenty years old at the time, pleaded guilty to the murder of his parents. On July 1, 1987, the defendant attempted to charge a long distance telephone call to his parents at their residence

---

[1] The defendant has failed to raise a due process claim under the state constitution.

[2] General Statutes § 17a-561 provides in part: "The Whiting Forensic Institute shall exist for the care and treatment of (1) mentally ill patients, confined in facilities under the control of the department of mental health, who require care and treatment under maximum security conditions, (2) persons convicted of any offense enumerated in section 17a-566 who, after examination by the staff of the diagnostic unit of the institute as herein provided, are determined to be mentally ill and dangerous to themselves or others and to require custody, care and treatment at the institute . . . ."

in Darien. When they refused to accept the charge, he became angry, hitchhiked from Danbury to Darien, broke into the family residence and hid in the basement while his parents were at work. When his parents returned home, the father went into the basement. The defendant attacked his father from behind and killed him by repeatedly striking him with an axe and a sledgehammer. When the mother went to the basement to look for her husband, the defendant also struck and killed her. The defendant removed his parents' bodies to a wooded area, drenched the corpses with gasoline and set them on fire.

Prior to sentencing, the defendant was examined by the Whiting staff and was found to be ineligible for treatment there. The defendant, in challenging the report, sought a hearing before the trial court to determine whether he was "mentally ill and dangerous to himself or others and . . . require[d] custody, care and treatment at the institute . . . ." General Statutes § 17a-567 (c). If he had been found eligible for treatment at Whiting, the defendant would have requested that the trial court sentence him in accordance with his conviction and order confinement at Whiting. General Statutes § 17a-567. The trial court denied the defendant's request for a hearing[3] and, without an opportunity to challenge the Whiting report, the defendant was sentenced in accordance with his conviction.

This court's decision on the issue of due process is predicated on *State* v. *Davis*, 190 Conn. 327, 341, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983), which held that "no constitutionally protected liberty interest was implicated by the

[3] The trial court denied the defendant's request for a hearing believing that it was bound by *State* v. *Davis*, 190 Conn. 327, 341, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983), and the statutory language of General Statutes § 17a-567.

trial court's refusal to grant the defendant's request for a hearing on the report filed by the Whiting Forensic Institute." I believe *Davis* was wrongly decided. Although the liberty interest protected by the due process clause of the United States constitution is narrowly construed by the majority of the United States Supreme Court,[4] I would find that the defendant has such an interest that originates under both the United States constitution and under state law. *Meachum* v. *Fano,* 427 U.S. 215, 225–29, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976).

I

This court first concludes that the defendant "has no liberty interest derived from the due process clause in obtaining treatment at Whiting instead of being incarcerated." Majority opinion, p. 183. I disagree.

In *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977), the United States

---

[4] In *Meachum* v. *Fano,* 427 U.S. 215, 230, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976), Justice Stevens wrote in his dissent: "The Court's holding today, however, appears to rest on a conception of 'liberty' which I consider fundamentally incorrect.

"The Court indicates that a 'liberty interest' may have either of two sources. According to the Court, a liberty interest may 'originate in the Constitution' . . . or it may have 'its roots in state law.' . . . Apart from those two possible origins, the Court is unable to find that a person has a constitutionally protected interest in liberty.

"If a man were a creature of the state, the analysis would be correct. But neither the Bill of Rights nor the laws of sovereign States create the liberty which the Due Process Clause protects. The relevant constitutional provisions are limitations on the power of the sovereign to infringe on the liberty of the citizen. The relevant state laws either create property rights, or they curtail the freedom of the citizen who must live in an ordered society. Of course, law is essential to the exercise and enjoyment of individual liberty in a complex society. But it is not the source of liberty, and surely not the exclusive source.

"I had thought it self-evident that all men were endowed by their Creator with liberty as one of the cardinal unalienable rights. It is that basic freedom which the Due Process Clause protects, rather than the particular rights or privileges conferred by specific laws or regulations." (Citations omitted.)

Supreme Court held that "it is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding. . . . *The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.*" (Citation omitted; emphasis added.) It is therefore clear that sentencing, like the criminal proceedings that precede it, implicates a liberty interest protected by the due process clause itself. The Whiting report is a "sentencing aid to the court"; *State* v. *Davis,* supra, 341; that plays an important role in the sentencing of defendants like Patrick Campbell. Accordingly, the defendant is entitled to a hearing before the trial court for the determination of whether he meets Whiting's requirements.

Relying on *Meachum* v. *Fano,* supra, this court holds that the Whiting report does not implicate a liberty interest protected by the due process clause. In *Meachum* v. *Fano,* supra, 224, the United States Supreme Court stated that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty . . . . The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons." The court's reliance on *Meachum* v. *Fano,* supra, however, is misplaced because the defendant in that case had already been sentenced and imprisoned; he sought only to require a hearing before the state moved him from one institution to another.[5] In a later case, *Vitek*

---

[5] The issue in *Meachum* v. *Fano,* 427 U.S. 215, 216, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976), was framed by the United States Supreme Court as follows: "The question here is whether the Due Process Clause of the Four-

v. *Jones,* 445 U.S. 480, 493, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), Justice White, who also wrote the majority opinion in *Meachum* v. *Fano,* supra, clarified that it is "a valid criminal conviction *and prison sentence* [that] extinguish a defendant's right to freedom from confinement. . . . Such a conviction *and sentence* sufficiently extinguish a defendant's liberty to 'empower the State to confine him in any of its prisons.' " (Citation omitted; emphasis added.) Whiting's report and recommendation are an important part of the sentencing process itself, a process to which due process protections apply.

## II

I also believe that a liberty interest arises under the state statutory scheme authorizing Whiting. Section 17a-561 provides in part: "The Whiting Forensic Institute shall exist for the care and treatment of . . . persons convicted of any offense enumerated in section 17a-566 who, after examination by the staff of the diagnostic unit of the institute as herein provided, are determined to be mentally ill and dangerous to themselves or others and to require custody, care and treatment at the institute . . . ." Murder, "an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers" is among the offenses enumerated in § 17a-566. Under the statutory scheme, a defendant who is found to be mentally ill and dangerous to himself or others, meets the Whiting criteria and should be sentenced to Whiting.

The legislative history of the Whiting statutory scheme, which establishes Whiting as a sentencing alternative, reinforces the expectation that a defend-

---

teenth Amendment entitles a state prisoner to a hearing when he is transferred to a prison the conditions of which are substantially less favorable to the prisoner, absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other events."

ant who meets the criteria will be sentenced to Whiting. "Strong support for a hospital to treat mentally ill persons who commit crimes . . . was demonstrated before the legislature. Among those who appeared before the legislature in 1957 to urge the adoption of legislation to establish Whiting was former Chief Justice William M. Maltbie, who urged that there be a hospital for a person 'who has committed a crime because of some mental weakness perhaps, because of some emotional disturbance or because there is in his mind some fence which the ordinary practices of cure of the criminal cannot by any possibility reach.' Conn. Joint Standing Committee Hearings, General Law, 1957 Sess., Pt. 2, p. 511." *In re Michael B.*, 41 Conn. Sup. 229, 242, 566 A.2d 446 (1989).[6]

Under the statutory scheme of Whiting, a defendant who is *mentally ill and dangerous* has a justifiable expectation of confinement at Whiting and therefore a liberty interest protected by the due process clause.[7]

---

[6] "The court recognizes that statements at public hearings by nonlegislators are not admissible as means of interpreting legislative acts. *Savings & Loan League of Connecticut, Inc.* v. *CHFA*, 184 Conn. 311, 315 n.1, 439 A.2d 978 (1981). The legislative record, however, is replete with statements by legislators that the intent of the legislation was to provide treatment for persons who are mentally ill . . . . 7 H.R. Proc., Pt. 7, 1957 Sess., pp. 3613–19; 7 S. Proc., Pt. 7, 1957 Sess., pp. 4008–11." *In re Michael B.*, 41 Conn. Sup. 229, 242 n.5, 566 A.2d 446 (1989).

[7] General Statutes § 17a-567 (b) is a sentencing alternative for defendants who are found eligible for Whiting. The sentencing alternative could have made a significant difference in this case, in which the defendant was sentenced to two concurrent terms of forty-five years. If the report had recommended that the defendant be confined to Whiting, a hearing would have been held pursuant to § 17a-567 (b). If, as a result of the hearing, the defendant was found "mentally ill and dangerous to himself or others and to require custody, care and treatment" at Whiting, the trial court would have been mandated to sentence him according to his conviction *and* to order confinement at Whiting. General Statutes § 17a-567 (c). Once confined to Whiting for treatment, a defendant's institutional confinement becomes subject to the provisions of General Statutes §§ 17a-569 and 17a-570. Section 17a-569 provides in pertinent part: "Not less than once every six months the staff of the institute shall give a complete psychiatric

Section 17a-561 furnishes a strong basis for believing that the Whiting staff will recommend commitment if a defendant meets the criteria listed above. Nevertheless, the statute does not provide a hearing for the defendant to test the conclusions of Whiting. The fact that the statutory scheme does not provide adequate procedural protections to ensure that the Whiting staff follow the purpose of § 17a-561 does not make the defendant's expectation of due process unjustifiable. Due process rights created by statute may not be defined by, or conditioned on, the legislature's choice of procedures for their deprivation. *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).[8]

---

examination to every patient confined in the institute. . . . The record of the examination may include a recommendation for transfer of the patient or change in confinement status." Section 17a-570 provides in pertinent part: "(a) As soon as is practicable the director shall act upon the examination reports of his staff. Upon review of each report and upon consideration of what is for the benefit of the patient and for the benefit of society, the director shall determine that such patient: (1) Remain in the institute for further treatment or be transferred to some other facility . . . or (2), if such patient is under commitment, be granted a leave of absence or extended visit or (3) has sufficiently improved to warrant his discharge from the institute . . . ."

In the present case, the majority holds that notwithstanding the defendant's substantial offer of proof of his mental illness, he was not entitled to be heard before the court and confinement in Whiting was foreclosed.

[8] "In *Vitek* v. *Jones,* 445 U.S. 480, 491 [100 S. Ct. 1254, 63 L. Ed. 2d 552] (1980), we pointed out that 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.' This conclusion was reiterated in *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 432 [102 S. Ct. 1148, 71 L. Ed. 2d 265] (1982), where we reversed the lower court's holding that because the entitlement arose from a state statute, the legislature had the prerogative to define the procedures to be followed to protect that entitlement.

"In light of these holdings, it is settled that the 'bitter with the sweet' approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and

Accordingly, I would construe § 17a-567 to require a hearing on the Whiting report in order to determine whether the defendant is "mentally ill and dangerous to himself or others and . . . require[s] custody, care and treatment at [Whiting]." General Statutes § 17a-567 (c). If the trial court found that the defendant met the requirements for Whiting, I would order that he be confined to Whiting in accordance with § 17a-567 (c). I would also find that portion of § 17a-567 (c) that provides "no court may order such confinement if the [Whiting] report does not recommend confinement at the institute" to be unconstitutional as violative of the due process clause of the United States constitution.

I therefore dissent.

property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology." *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).