[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (Re: Respondent's Motion to Preclude Involvement of Child Support Enforcement Bureau And/or to Order Plaintiff to Terminate Relationship with Child Support Enforcement Bureau Dated April 15, 2002)
The marriage of the parties was dissolved by a judgment of divorce entered in the State of California on January 17, 1991. The parties were awarded joint legal custody of their two minor daughters (Allison Scully, born August 23, 1996 and Sara Scully, born July 19, 1989). The current child support order requires the Respondent father to pay child support to the Petitioner mother in the amount of $1,293 bi-monthly, i.e. $2,586 per month.
The Respondent is the executive producer of a long-running prime time major network television show, and resides in Malibu, California. The Petitioner relocated to Connecticut with the children some years ago. The Respondent sent his child support payments directly to the Petitioner, usually by regular mail. The California judgment did not require that the Respondent make these payments through the State of California or through income withholding.
In February, 2002, the Petitioner sought the intervention of the Connecticut Child Support Enforcement Bureau, requesting that it monitor the Respondent's child support payments by mandating that the Respondent redirect his payments to the State of Connecticut instead of making his payments directly to the Petitioner. The State of Connecticut, Department of Social Services, Bureau of Child Support Enforcement sent a written "Notice of Redirection of Court-Ordered Support Payments" dated February 14, 2002 to the Respondent at his home address in Malibu, California. This standard two-page Notice informed the Respondent that because the Petitioner had requested the services of the Child Support Enforcement Bureau for the collection of her child support payments, the Respondent was to redirect his support payments to the State of Connecticut under the authority of Connecticut General Statutes § 17b-179 (b), and as required by Title IV-D of the Social Security Act. The Notice provided the respondent with a file number, address for payments and instructions to make the checks or money orders payable to the "State of Connecticut IV-D Agency".
This initial notice to the Respondent also indicated that he had a one-payment delinquency in this matter. The Respondent in turn notified CSEB that he denied that there was a delinquency, as he was continuing to make direct payments to the Petitioner. CSEB eventually acknowledged to the Respondent that he was not delinquent or in arrears by letter dated March 20, 2002. In his letter to the State of Connecticut dated April 7, 2002, the Respondent indicated that he was enclosing his child support check "under extreme protest", challenging the appropriateness of the requirement that he pay his child support through the State of CT Page 9810-z Connecticut (rather than directly to the Petitioner), particularly because the Petitioner "always receives her support checks on time". Shortly thereafter, the Respondent (through his legal counsel, Day, Berry Howard) filed the instant Motion to Preclude. The Motion itself includes several pages of argument in support of the motion.
The first argument presented in the Motion indicates that because Mr. Scully had been making direct payments to the Petitioner for over eleven years "without incident", (i.e. because all his payments were consistent, in full and timely), the "the foregoing sequence of events has resulted in substantial inconvenience to Mr. Scully and moreover, has inflicted a substantial amount of stress and anxiety on Mr. Scully and his family. Not only is it humiliating for Mr. Scully to receive envelopes containing the words `Child Support Enforcement Bureau' in large, bold-faced print, but the Bureau continues to send documentation to Mr. Scully threatening income withholding despite the fact that even the Bureau agrees that he is not in arrears or delinquent in any way. . . . The intrusion of the Child Support Bureau in this case will undoubtedly prove, as it already has, to be a waste of the time, money and resources of all involved. For example, due to the involvement of Child Support Bureau, it will take significantly longer for the Children to receive the benefit of Mr. Scully's child support payments because of the time it takes for the Bureau to receive, process and distribute the child support monies. . . . [The Petitioner] is simply trying to inconvenience Mr. Scully by forcing him to be under the control of a State Agency under penalty of wage execution."
The Respondent's brief further argues that the Petitioner's use of the resources of the CSEB is contrary to the legislative intent of Connecticut General Statutes § 17-179b and contrary to public policy. That is, the statute was not intended to apply to non-state assistance cases, and was not intended to apply to cases where the payor is not delinquent.
The Respondent testified that he had always been consistent and timely in his child support payments, and that the Petitioner merely was trying to harass him, in part because of an ongoing visitation dispute. He indicated that he was embarrassed to receive mail at his home address with the return address "Child Support Enforcement Bureau" on the envelope and embarrassed that a notice was sent from the CSEB to his employer, Twentieth Century Fox, requesting medical insurance information for the children, with the implication being that he might be viewed as a "deadbeat dad" by anyone who happened to see these envelopes and notices. He suggests that the State should not be involved in any child CT Page 9810-aa support collection case if the payor is making timely payments. However, he did acknowledge that some payments may have been a few days late, that one check had bounced in 1996, and that he did not sign the check he mailed for February, 2002. He also acknowledged paying off a $31,000 arrearage in 1994.
The Petitioner testified that it was not unusual for her to receive the Respondent's child support checks after the first of the month and fifteenth of the month due dates. Copies of child support payment envelopes from the Respondent with postmarks from California dated on or after the child support payment due dates in 2001 and 2002 were submitted as an exhibit. The Petitioner indicated that she simply wants to assert her rights to have the child support payments monitored by the State of Connecticut through its IV-D collection services.
Subsequently, the Connecticut Attorney General's office filed a Memorandum in Opposition to Respondent's Motion to Preclude. . . . dated May 17, 2002, requesting that the Respondent's Motion be denied for one or more reasons. Firstly, the State claims that the statutory powers of a Family Support Magistrate delineated in Connecticut General Statute § 46b-231 (m) (1-12) do not include the power to interfere with Support Enforcement's relationship with a client.
Also, the State asserts that Connecticut General Statutes § 17b-179
(h) requires SED to provide the same services for obtaining and enforcing child support orders to non-TANF cases as in TANF cases[1]. The State further asserts that C.G.S. § 52-362 (b) mandates wage withholding to secure payment of the support order[2]. The State's brief also indicates that C.G.S. § 52-362 (c)(2) mandates the withholding whether or not a delinquency exists.[3]
The State requests that the Respondent's Motion be denied and proposes that the wage withholding be effective upon the accrual of a thirty-day delinquency (rather than immediately) as authorized by C.G.S. § 52-362.
The Respondent's counsel provided a Reply Brief dated June 3, 2002. It contains argument asserting that the statute empowering the Family Support Magistrate to act, including the power to hear, determine, decide, make and enforce orders in Family Support matters includes the authority to determine whether or not support payments must be made through the State of Connecticut if requested by the Petitioner. It farther asserts that if C.G.S. § 17b-179 precludes the Magistrate from exercising any such discretion, said statute is an unconstitutional violation of the "separation of powers" clause of the Connecticut Constitution as an improper infringement on the Magistrate's judicial CT Page 9810-ab authority and as a significant interference with the orderly function of the Court's judicial role, citing State v. Campbell, 224 Conn. 168,177-178, 617 A.2d 889 (1992).
Respondent's Reply Brief further argues that C.G.S. § 17b-179 does not absolutely mandate the CSEB to redirect child support payments to the State of Connecticut, as it does not say that the Bureau "shall redirect payments", but rather indicates that the Bureau "shall have the authority to redirect" such payments.
The Respondent additionally asserts in his Reply Brief that while Part D of Title IV of the Federal Social Security Act, 42 U.S.C.S. § 654
subsection 4 requires that a State plan for child and spousal support must provide that the State will provide services for any child (i.e. whether or not on governmental assistance), the enforcement language of subsection 5 indicates that redirection is mandatory only in cases involving applicants who are receiving state assistance.[4]
The Reply Brief further proposes that in the event that the Respondent's Motion is otherwise denied, the Respondent be allowed to maintain direct payments to the Petitioner with the State merely serving in a "supervisory" capacity. He offers to make direct deposits to the Petitioner's bank account.
Finally the Respondent argues that the State's request for the income withholding with a thirty-day delinquency accrual delay also should be denied.
 Discussion and Ruling
This court agrees with the State's assertion that the administrative collection and disbursement process includes the expansion of CSEB services to non-TANF cases as set forth in C.G.S. § 17b-179. This court also agrees with the State's assertion that the collection and disbursement process language of C.G.S. § 52-362 (b) and 52-362
(c)(2) as set forth above is mandatory. One apparent intent and an obvious result of this statutory scheme is to increase the likelihood of consistent and timely child support payments from all obligors, whether or not state assistance is involved. This Court views the administrative collection and disbursement aspect of child support services to be on the periphery of (if not separate from) the broad statutory "enforcement" powers of the Family Support Magistrates. The "enforcement" aspect of the Family Support Magistrate powers generally encompasses courtroom contempt proceedings. Further, C.G.S. § 46b-231 (m) (1-12) does not include any CT Page 9810-ac specific empowering language regarding "collection and disbursement services". Therefore, this court finds that the collection and disbursement process created by the legislature is not an improper infringement upon the Family Support Magistrate's judicial power and does not interfere with the orderly function of the judicial role. Thus, this court finds that Connecticut General Statute § 17b-179 is not an unconstitutional infringement upon the judicial authority of the Family Support Magistrate Division.
Further, the Respondent's argument that the language of C.G.S. §17b-179 (b) does not mandate a redirection of payments but rather gives CSEB the authority to redirect payments overlooks two key provisions. Firstly, C.G.S. § 17(b)-179(m) authorizes the Commissioner of Social Services to adopt regulations which shall establish performance standards to address the mandatory provisions of state and federal regulations in this regard to assure compliance, so as to not lose the federal funding. Accordingly, § 17b-179(b)-2 of the State of Connecticut IV-D Regulations entitled "Redirection of support payments" mandates the redirection of all child support payments.[5]
Secondly, the Respondent's claim that 42 U.S.C. § 654 does not mandate the redirection of payment to the State overlooks the mandatory language of § 654b, entitled "Collection and Disbursement of Support Payments", which states in part:
 "In order for a State to meet the requirements of this section, the State agency must establish an operating unit (which shall be known as the "State disbursement unit") for the collection and disbursement of payments under support orders — (A) in all cases being enforced by the State pursuant to . . . 42 U.S.C. § 654 (4)."
It appears that the Respondent is a dedicated father. His payment history over the past several years places him on the positive end of payment consistency and delinquency spectrum. However, this court finds that these federal and state statutory mandatory directives do not allow a Family Support Magistrate any discretion in this matter under any circumstances. Therefore the Respondent's Motion to Preclude is denied.
BY THE COURT
 JOHN E. COLELLA Family Support Magistrate CT Page 9810-ad